IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY L. SHAFFER,

    Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 14-1114

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 11). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 12). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting in part and denying in part both motions for summary judgment.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about July 1, 2010, Plaintiff applied for DIB, and on or about July 8, 2010, he applied for SSI. (R. 168, 172-178, 181-184, 203). In both applications, he alleged that since April 27, 2010, he had been disabled due to myocardial infarction, coronary artery disease, depression, bipolar disorder, ADD, and arthritis in his hands. (R. 219). His last date insured is

1

December 31, 2014. (R. 34, 185-186). The state agency denied his claims initially, and he requested an administrative hearing. (R. 80-92). Administrative Law Judge ("ALJ") Marty Pillion held a hearing on October 12, 2011, at which Plaintiff was represented by counsel. (R. 48-76). Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 66-76). In a decision dated November 14, 2011, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 32-42). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on April 25, 2013, the Appeals Council denied Plaintiff's request for review. (R. 22-24). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 8 and 11). The issues are now ripe for my review.

## II.   LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

## B. WHETHER THE ALJ FAILED TO PROPERLY EVALUATE THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN AND CARDIOLOGIST

The ALJ found that Plaintiff had severe impairments, including coronary artery disease with myocardial infarction status post stenting, mitral regurgitation, left ventricular dysfunction, asthma, status post right shoulder surgery with bursitis and tear, bipolar disorder, attention deficit hyperactivity disorder, anxiety disorder, cognitive disorder, mix expressive/receptive disorder, non-specific white matter disease, and obesity. (R. 34). He further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he was limited to: occasional stoop, balance, kneel, crouch, crawl, and climb ramps and stairs; periods of standing not to exceed 30 minutes at one time; no climbing ropes, ladders, or scaffolds; no exposure to weather, extreme heat or cold, wetness, humidity, dampness, or atmospheric conditions such as smoke, fumes, odors, gases, or poor ventilation; simple, routine, repetitive tasks and simple work related decisions; infrequent changes in work setting defined as no more than one per week; and occasional interaction with co-workers, supervisors, and the public. (R. 37). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. (R. 41-42).

Plaintiff argues the ALJ's findings are deficient because he did not appropriately evaluate the opinions of his treating cardiologist, Dr. Floyd Casaday, M.D., and his treating primary care physician, Dr. Roberto Turnbull, M.D. Pl.'s Br. [ECF No. 9] at 5-13. After careful review of the record, applicable regulations, and relevant case law, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a

non-examining source. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. §§ 404.1527(c)(2); 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. §§ 404.1527(c)(4); 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the

5

record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. §§ 404.1527(d)(1), (3); 416.927(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008). In the present case, I find that the ALJ met this standard.

Plaintiff argues that the ALJ erred in discounting Dr. Turnbull's opinion set forth in the Physical Residual Functional Capacity Questionnaire he completed on October 3, 2011, that, due to his impairments, Plaintiff likely would miss more than four days of work per month. Pl.'s Br. [ECF No. 9] at 6-11 (citing R. 577-580, Ex. 26F). I disagree. As an initial matter, the ALJ found that many of the restrictions Dr. Turnbull noted on the October 2011 form were well-supported by the medical evidence, and he included similar restrictions in his RFC finding. (R. 39) (citing Ex. 26F). The ALJ rejected the portion of Dr. Turnbull's opinion regarding absences because it was not supported by the substantial evidence of record or by Dr. Turnbull's own progress notes, and it was not consistent with Plaintiff's activities of daily living. (R. 39). These are appropriate

6

reasons for declining to give a treating physician's opinion little weight.  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 416.927.

Upon review of the record, I find that substantial evidence supports the ALJ's opinion in this regard.  As the ALJ noted, the evidence indicates that Plaintiff enjoys a wide range of activities of daily living that are consistent with an individual who is capable of performing substantial gainful activity.  (R. 40-41).  Such activities include:  living alone in a mobile home, caring for personal needs independently, driving, paying bills, counting change, managing bank accounts, watching television, working on the computer, having dinner with friends, talking on the phone, mowing the lawn with breaks, cleaning, doing laundry, cooking, vacuuming, shopping, and taking care of his mother who lives next door.  (R. 35, 40-41, and Ex. 2E, Testimony).  The ALJ further correctly explained that nothing in Dr. Turnbull's underlying treatment notes or other record evidence mentions work absences or suggests that Plaintiff would require the absences indicated in the doctor's October 2011 RFC questionnaire.

Plaintiff's attempt to bolster Dr. Turnbull's opinion by arguing that the opinion is consistent with treating cardiologist Floyd Casady's "opinion of 'temporary disability' and New York Heart Association's Class II rating" is unpersuasive.  Pl.'s Br. [ECF No. 9] at 9.  On August 17, 2010, Dr. Casady noted on an otherwise uncompleted "medical source statement of Plaintiff's ability to perform work related physical activities," that Plaintiff was "temporarily disabled due to [myocardial infarction]" and that his next appointment was on August 26, 2010.  (R. 371-372, Ex. 7F). As set forth above, and as the ALJ correctly explained, the determination of whether an individual is disabled within the meaning of the Act is an ultimate issue reserved for the Commissioner.  Additionally, as the ALJ also indicated, Dr. Casady's August 2010 opinion, if anything, is overshadowed by his subsequent opinion in September 2011 that Plaintiff's functioning level was equivalent to "New York Heart Association Class II" ("NYHA Class II").  As

7

the ALJ noted in his opinion, NYHA Class II indicates only "slight limitation of physical activity." (R. 39).[1] Neither of Dr. Casady's opinions identifies any specific functional limitations due to Plaintiff's impairments. (R. 371-372, 571-576, Exs. 7F, 25F).

Because the ALJ adequately explained his reasons for rejecting the opinion of Dr. Turnbull that Plaintiff would be absent from work four or more times per month, and identified examples of record evidence inconsistent with and contrary to that opinion, I find no error on this issue.

**C.  WHETHER THE ALJ GAVE IMPROPER WEIGHT TO THE OPINIONS OF THE NON-EXAMINING STATE AGENCY MEDICAL CONSULTANT**

Plaintiff argues that the ALJ erred in assigning "great weight" to the September 8, 2010 opinion of non-examining state agency consultant, Nghia Van Tran, M.D. Pl.'s Br. [ECF No. 9] at 12-13. Plaintiff contends that because Dr. Tran is not a cardiologist, did not examine Plaintiff, and did not have the opportunity to consider Dr. Turnbull or Dr. Casady's September and October 2011 medical opinions, the ALJ improperly relied on Dr. Tran's opinions to deny Plaintiff's claim. Id. This argument is without merit.

As set forth above, where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Here, the ALJ acknowledged that Dr. Tran was a non-examining physician, but noted that he was a medical expert who is familiar with agency programs and that his opinions were consistent with the substantial evidence of record. (R. 39, citing Ex. 10F). Moreover, the ALJ gave Dr. Tran's

---

[1] According to the American Heart Association, the NYHA Functional Classification is the most commonly used classification system for heart failure. It places patients in one of four categories based on how much they are limited during physical activity. Class II is defined as "slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." By way of comparison, Class III is defined as "marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea." http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp.

opinion great weight only insofar as it was consistent with his RFC finding. Id. To the extent other substantial evidence of record, including treating physician's records and Plaintiff's testimony, supported additional limitations, the ALJ incorporated those limitations into the RFC finding. Such additional limitations included restrictions on crouching, crawling, and climbing, as well as numerous environmental restrictions. (R. 37). Finally, it is not material in this case that Dr. Tran's opinion predates Dr. Casady's and Dr. Turnbull's 2011 opinions. Although an ALJ generally is required to consider the reports of State agency medical consultants, there is no requirement that an ALJ must receive an updated report from the State medical experts whenever new medical evidence is available. See Wilson v. Astrue, 331 F. App'x 917, 919 (3d Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(2)(i)). This is especially true where, as here, the ALJ reviewed the subsequent records at issue and specifically discussed them in fashioning Plaintiff's RFC. See Jordan v. Astrue, Civil Action No. 08-243 Erie, 2009 WL 2957777, at *7 (W.D. Pa. Sept. 10, 2009) (citing Wilson, 331 F. App'x at 919). For the reasons set forth above and by the ALJ, even if Dr. Tran had the benefit of these later records, the records do not support Plaintiff's argument that he was incapable of performing substantial gainful activity.[2]

For all of these reasons and based on the record in this case, I find the ALJ did not err in weighing the medical opinions at issue in this case. Therefore, remand on this issue is not warranted.

---

[2] Plaintiff additionally argues that the ALJ's reliance on Plaintiff's activities of daily living is inconsistent with Dr. Tran's opinion that Plaintiff's daily activities were "significantly limited." Pl.'s Br. [ECF No. 9] at 12. This argument is without merit. As an initial matter, Dr. Tran did not find that Plaintiff's activities were "significantly limited." Rather, he stated only that Plaintiff "had described" them as such. (R. 407). Dr. Tran found that this statement was partially consistent with the limitations indicated by the other evidence in the case and that, based on the record evidence, Plaintiff's statements were "partially credible." Id. Moreover, the ALJ did not conclude that Plaintiff could engage in daily activities without limitation. Rather, he found only that Plaintiff's self-described activities of daily living were consistent with an individual who was capable of performing some substantial gainful activity and who retained the ability to perform simple, repetitive, routine job tasks consistent with the RFC. (R. 40-41).

### D. WHETHER THE ALJ ERRED IN FAILING TO DISCUSS PLAINTIFF'S MIGRAINE HEADACHES

Plaintiff argues that the ALJ erred as a matter of law by failing to discuss Plaintiff's migraine headaches and, in turn, failing to find that those headaches were a "severe impairment" within the meaning of the Act. Plaintiff contends that the RFC finding thus fails to include work-related limitations caused by Plaintiff's headaches. Pl.'s Br. [ECF No. 9] at 14-16. After careful consideration, I agree in part.

The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47

Typically, an error at step two is harmless where the ALJ finds in the claimant's favor at step two and proceeds with the sequential analysis even if he had erroneously concluded that other impairments were not severe. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)). Where, "on the other hand, the ALJ actually fails to make any finding of severity or non-severity with respect to an impairment of record – as opposed to an explicit but incorrect finding of non-severity – the analysis is somewhat more complex." Pailin v. Colvin, Civil Action No.

10-4556, 2013 WL 5924972, at *3 (E.D. Pa. Nov. 5, 2013). It is well-established that although the ALJ in a social security case may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for rejecting that evidence. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Otherwise, the reviewing court cannot tell if "significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "Thus, unlike the situation where an ALJ considers evidence of an impairment and deems that impairment non-severe, an ALJ's complete disregard of an impairment at Step Two and in the remaining parts of the sequential analysis can constitute grounds for remand." Pailin, 2013 WL 5924972, at *3. This is especially true if the ALJ fails to consider any limitations caused by the omitted impairment during his RFC assessment. See id. (citing S.S.R. 96-8p which states that the ALJ must consider limitations and restrictions imposed by all an individual's impairments, severe and non-severe, in assessing RFC).

When asked at the hearing to tell the ALJ "in his own words" what prevented him from working, Plaintiff replied, inter alia, that he "gets headaches all the time." (R. 55). When his attorney asked him to elaborate, Plaintiff testified that he usually got a headache two to three times a week; that the headaches would last a day to two days; that he was unable to "go on about his life," read, or watch TV when he had a headache; and that the headaches impacted his mood. (R. 66). Although the medical evidence is far from extensive, Plaintiff alleges that Dr. Turnbull's treatment notes reflect consistent reports of migraines. Pl.'s Br. [ECF No. 9] at 15 (citing R. 562-568).[3] Dr. Casady's treatment notes also indicate that Plaintiff reported experiencing migraines 1-2 times per month since childhood. (R. 375).

---

[3] Whether Dr. Turnbull's treatment notes actually reflect a diagnosis of migraine headaches is questionable at best. Although it is possible that the often illegible notes list migraines among Plaintiff's complaints, it does not appear that the records go on to discuss any headache-related symptoms or limitations or prescribe any treatments for headaches. Because the ALJ failed to discuss headaches at all in his analysis, however, I decline to attempt to decipher Dr. Turnbull's handwritten treatment notes for the first time here.

11

As set forth above, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease with myocardial infarction status post stenting, mitral regurgitation, left ventricular dysfunction, asthma, status post right shoulder surgery with bursitis and tear, bipolar disorder, attention deficit hyperactivity disorder, anxiety disorder, cognitive disorder, mix expressive/receptive disorder, non-specific white matter disease, and obesity. (R. 34). The ALJ further considered Plaintiff's allegation of suffering "arthritis of the hands" and held that because there were not sufficient medical signs or laboratory findings to demonstrate the existence of arthritis of the hands, that alleged impairment was "not a medically determinable impairment" within the meaning of the Act. See R. 35 (citing S.S.R. 96-4). It is undisputed that the ALJ never mentioned headaches in any context in his step two analysis.

Given the references to Plaintiff's alleged headaches in Plaintiff's testimony and the medical records, the ALJ should have at least considered the headaches at step two of his analysis. Because the ALJ failed to do so, his step two determination is not supported by substantial evidence. I cannot interpret the ALJ's silence as a determination that Plaintiff's headaches were not a medically determinable impairment or that they were not "severe." This is especially true given the fact that the ALJ expressly discussed another alleged condition -- arthritis of the hands -- and held that it was not a medically determinable impairment. See, e.g., Rupard v. Astrue, 627 F. Supp. 2d 590, 596 (E.D. Pa. 2009) (finding that the ALJ's silence regarding plaintiff's hand impairment could not be interpreted as a determination that the impairment was not severe, especially where the ALJ expressly determined that Plaintiff's depression and alcohol abuse were non-severe); Berrios-Vasquez v. Massanari, No. Civ. A. 00-cv-2713, 2001 WL 868666, at *7 (E.D. Pa. May 10, 2001) (the ALJ should have explicitly considered evidence of pancreatitis and peripheral neuropathy instead of deciding sub silentio that the impairments were not severe). The ALJ likewise neither acknowledged nor discussed

Plaintiff's allegations of headaches in his RFC analysis or otherwise in his opinion. Thus, the ALJ's step two error was not harmless, and remand is required for further consideration of Plaintiff's alleged headaches.[4]

## E.     WHETHER THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

Plaintiff also challenges the ALJ's conclusions regarding Plaintiff's credibility with respect to his complaints of pain and other disabling symptoms. Pl's Br. [ECF No. 9] at 16-19. These arguments are unpersuasive.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R.17). Pain alone, however, does not establish a disability. 20 C.F.R. §§ 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence

---

[4] Although I agree that the ALJ erred in failing to discuss Plaintiff's headaches, I make no finding as to whether Plaintiff's headaches were a "medically determinable impairment" or a "severe impairment," within the meaning of the Act, or whether the ALJ's RFC determination was flawed. These are questions more properly left for the ALJ to consider on remand.

13

and the ALJ must explain the reasons for rejecting non-medical testimony. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002).

After my own review of the record, I find that the ALJ followed the proper method to determine the Plaintiff's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 38-41). Indeed, the ALJ directly addressed Plaintiff's testimony that he experienced various forms of pain and did not reject his allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See R. 37 (RFC finding containing limitations on, inter alia, standing, balancing, stooping, kneeling, crouching, crawling, and climbing). Nevertheless, the ALJ discussed the fact that Plaintiff's statements concerning his impairments and their impact on his ability to perform sedentary work activities were inconsistent with his wide range of activities of daily living, his medical history, his medication regimen, his work and earnings history, his demeanor at the hearing, and other evidence of record. (R. 39). With respect to activities of daily living, Plaintiff reported that he was able to live

14

alone in a mobile home, care for his personal needs independently, drive a car, pay bills, count change, manage accounts, watch television, work on the computer, have dinner at friends' houses, talk on the telephone, mow the lawn with rest breaks, clean, do laundry, cook, and shop. See id. (citing Ex. 2E). The ALJ's analysis of the medical evidence, including Plaintiff's medication history and treatment other than medication, also reflects a fairly conservative course of treatment that does not support a finding of totally disabling symptomology. (R. 40). The ALJ further noted that Plaintiff was able to work for 14 years at Wal-Mart without interference from his mental health symptoms and that he was able to interact and communicate properly at the hearing without displaying any overt anxiety or inappropriate social behavior. (R. 36, 38). Accordingly, I find that substantial evidence supports the ALJ's ruling and his rejection of parts of Plaintiff's testimony as not fully credible. See Burns, 312 F.3d at 130.

Plaintiff's argument that the ALJ failed to favorably consider his long work history is not fatal to his credibility analysis. The ALJ acknowledged Plaintiff's 14-year work history in his opinion and agreed Plaintiff could not perform any past relevant work. (R. 38, 41). As set forth above, the ALJ did not discount Plaintiff's testimony regarding his pain and other symptoms in its entirety. Rather, the ALJ found that testimony partially credible, and, his RFC finding contained numerous restrictions to accommodate Plaintiff's subjective complaints of pain and other symptoms. (R. 36-38). To the extent Plaintiff alleged even greater limitations or symptoms, the ALJ properly explained and supported why that testimony was not fully credible.

Plaintiff further argues that the ALJ erred by engaging in impermissible "sit and squirm" jurisprudence when he listed Plaintiff's "demeanor at the hearing" among his reasons for finding Plaintiff not fully credible. [ECF No. 9, at 17]. This argument is without merit. The "sit and squirm" method is employed when an ALJ expects a claimant to behave a certain way at the hearing and if the claimant fails to manifest the behaviors, the claim is denied. Van Horn v.

Schweiker, 717 F.2d 871 (3d Cir. 1983); Facyson v. Barnhart, 94 F. App'x 110, *3 n. 7 (3d Cir. 2004). Here, Plaintiff's demeanor was not the *sine qua non* of the ALJ's disability determination. Rather, the ALJ properly considered Plaintiff's demeanor and testimony at the hearing in conjunction with other evidence in the record in determining whether Plaintiff was fully credible. See Reefer, 326 F.3d at 380 ("We . . . ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."). For these reasons, I find that the ALJ did not engage in "sit and squirm" jurisprudence, and remand is not warranted on this basis.

### III. **CONCLUSION**

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that although most aspects of the ALJ's decision are supported by substantial evidence, the ALJ failed to address Plaintiff's testimony and other record evidence regarding his headaches in step two of his analysis. The case therefore is remanded for further consideration of this limited issue in light of this Opinion.[5] For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied to that same extent. An appropriate Order follows.

---

[5] If, on remand, the ALJ finds that Plaintiff's headaches are a medically determinable impairment and/or that such impairment is "severe," he also must consider whether and/or how that determination impacts his evaluation of the medical evidence of record as well as his credibility analysis.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY L. SHAFFER,

        Plaintiff,

    vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil Action No. 14-1114

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 6th day of July, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED in part, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED in part and DENIED in part to the extent set forth in the Opinion attached hereto.

                          BY THE COURT:

                          /s/ Donetta W. Ambrose
                          Donetta W. Ambrose
                          U.S. Senior District Judge